In the Matter of Liquidation of Federal Trust Company, S. L. Cantley, Commissioner, etc., Respondent, v. W. W. Finney, Appellant.—51 S. W. (2d) 147.

Kansas City Court of Appeals. May 23, 1932.

*R. R. Brewster* and *Willaim B. Bostian* for respondent.

*Proctor & Phillips* for appellant.

ON MOTION FOR REHEARING.

BLAND, J.—Appellant contends that there is no evidence that he was acting for the Kansas Bank in obtaining the loan from the Trust Company; that the Kansas Bank paid nothing for the $15,000 credit which it obtained on the books of the Trust Company; that "the only obligation assumed and executed in return for the $15,000 credit at the Federal Trust Company was the personal note signed by Finney. Finney did not receive any credit personally or in his name at the Federal Trust Company as a result of this transaction. He gave the credit to which he was entitled, by personally signing the note for $15,000, for the Kansas Bank. The Kansas Bank obtained a credit of $15,000 for which it paid nothing and in turn gave to Finney a credit for $15,000." No explanation is offered by appellant as to why it was necessary or desirable that he raise the money for himself in this round about manner. Why did not Finney open up an account with the Trust Company if it was his personal business and not the bank's? There is not a word in the record that Finney had an understanding with his bank that it was acting for him. It is true that he testified that after the Trust Company failed the Kansas Bank authorities requested him to "reduce personally the balance at the Federal Trust Company by $2,000" and that he paid the bank this sum of money. But for a reason hereinafter to be mentioned there was good cause why Finney felt that he should protect the bank. There are a number of things in the record indicating that Finney was acting for the bank in making the loan. After the Trust Company went into liquidation the Bank filed a claim for the deposit standing in its name in the Trust Company. Finney filed no claim. If Finney were merely using the Bank as a medium through which he was dealing for himself, in borrowing money from the Trust Company, why did he not furnish the money to increase the deposit to $18,000 instead of the Bank? Why did the Bank keep the deposit up to $5,000 instead of Finney? Why did the Bank stand the difference between the interest on the deposit in the Trust Company and that which accrued on Finney's note? It will be borne in mind that the burden was upon Finney to bring forward facts showing that he is entitled to a setoff. There are too many unexplained facts in the case tending to show that the loan was made for the Bank, and it after re-

imbursed Finney for obtaining the loan for it, to permit a contrary conclusion. To say that it was Finney's transaction would be placing him in a position of using his Bank to his own advantage, in the absence of some explanation of these facts. We cannot presume that Finney intended to profit at the expense of his Bank. The presumption is to the contrary.

However, assuming that Finney was getting the money from the Trust Company for himself and was using his Bank in the transaction for his own ends, in what condition does this leave his claim? Undoubtedly, when he drew $15,000 from his Bank the deposit created in the Trust Company became the property of the latter. The effect of the transaction was that Finney agreed with his Bank that if it would pay him $15,000 he would obtain a like amount for it from the Trust Company, which he did when he created a credit for it in that amount in the Trust Company. Suppose upon the withdrawal of the $15,000 by Finney he had become insolvent, who would have been entitled to the deposit in the Trust Company to the credit of the Bank, it or Finney's creditors? The question, it would seem, answers itself. It makes no difference if Finney agreed with the Bank to see that it lost nothing by the transaction and sought to protect it when requested to do so by the banking authorities, the money was the Bank's and as the whole transaction was for Finney's benefit why should he not protect his Bank when the Trust Company failed?

In his motion for a rehearing appellant says:

"It is settled law in every jurisdiction that an assignee or liquidating agent steps into the shoes of the bankrupt. His obligations and rights are no greater and no less. (Citing cases.)

"If the Federal Trust Company had not failed, and if when Finney's note matured, he, Finney, and the Kansas Bank had jointly requested the Federal Trust Company to credit the $5,000 deposit on Finney's note, the Federal Trust Company would have undoubtedly so applied the credit. Had they refused to do so they could have been lawfully compelled to apply the $5,000 deposit on Finney's note. But the Bank failed and Finney and the Kansas Bank, the only two persons or entities who could have had any possible interest in the fund, requested, each of them, that the liquidating agent apply the $5,000 fund on Finney's note. He refused. In other words, the liquidating agent assumed a right which the bank of which he was agent did not possess, namely, the right to refuse to apply the $5,000 deposit on Finney's note.

"We submit that this single consideration is decisive of the issues in this case."

This argument of appellant proves the weakness of his case. It is true that had the *Trust Company not failed* and he and his Bank

jointly had requested the Trust Company to credit his note with the $5,000, it would have been compelled to do so, because the request of the Bank would have amounted to an assignment or transference of the deposit to Finney, *but since the Trust Company has failed* no depositor can assign or transfer his deposit to another for the purpose of having the latter use it as an offset to his debt to it. [7 C. J., p. 746.]

The motion for a rehearing is overruled.